JEREMIAH LEBALLISTER *versus* SAMUEL NASH.

Where a person promises, by his note, to deliver a certain quantity of hay, of a stipulated quality, at a place named, and within a stated time, the promise is performed, if hay, sufficient in quantity and quality, was deposited at the place within the time agreed upon, and set apart and appropriated to the payment of the note.

It is not necessary, in such case, that the hay " should be weighed and specially turned out." The quantity may be otherwise ascertained, at the risk of the person making the payment; and no turning out, or change of position, is necessary, further than to separate or set it apart, so that it may be identified and removed by the owner.

EXCEPTIONS from the Eastern District Court, ALLEN J. presiding.

Trover to recover the value of a quantity of hay alleged to have been taken and converted by the defendant. The plaintiff introduced a note of which the following is a copy : —

" Enfield, Treat's Mills, Sept. 13, 1838. — For value received I promise to pay Jeremiah Leballister, or order, three *tons* of good English hay, at my barn, in Enfield, within six months.

" Daniel Nash."

On the above note was the following indorsement : — " March 15, 1839. Received twenty-one hundred of the within note."

The plaintiff then introduced the deposition of Abner True, who testified that some time in the spring of 1841, he bargained with the plaintiff for this note, and agreed to take the hay, if he could get it on the note, and that within a week or ten days after he went to the defendant, and asked him, if there was any hay in his barn, left there by his brother for the plaintiff, and showed him the note. He said his brother left some hay for Leballister, who had taken away part of it, and the rest he himself fed out to his sheep ; and that the indorsement was on the note at that time. The plaintiff also introduced Samuel Pratt, who testified that some time in March, 1839, he went with the plaintiff to Enfield, and called on the defendant for the hay due on the note, which the plaintiff had with him, and asked defendant if his brother left hay there ; that the defendant replied, that it was down in such a barn, pointing to the barn, but did not go with them to the barn, and said the hay was in the barn, and that they might take it ; that they went to the barn, and found, as the witness calculated, about three tons of hay in it ; and that the barn did not appear to have been used that winter ; that there was no road to it, and that the snow was not beat down ; that the barn was a small sized one, and that there was no appearance of cattle having been recently about there. He further testified, that they took away two small loads, which were weighed after they arrived at Oldtown, where they carried it, and the amount was indorsed on the note. He also testified, that the defendant said, that his brother had moved away, and that every thing had been moved away, and at the same time lent them a pitchfork for the purpose of loading the hay.

Whereupon the counsel for the defendant requested the presiding Judge to instruct the jury, that in order to vest the hay in the plaintiff, so as to entitle him to recover in this action, it was necessary that a sufficient quantity of hay to pay the note should have been weighed, and specially turned out, set apart, and ready to be delivered at the time and place

designated in the note, in payment of the same; and that unless this was proved, the plaintiff could not recover in this action.

But the Court instructed the jury, that if Daniel Nash had a greater amount of hay than was necessary to pay the note, and was willing to weigh off enough for its payment, but never did it, that no part of the hay would vest in the plaintiff; but if he had left at his barn in Enfield three tons of hay for the payment of said note, that the property in the hay would vest in the plaintiff, and he might maintain trover for its conversion by the defendant.

He further instructed the jury, that although the hay in the barn never had been weighed, yet if the evidence satisfied them, that Daniel Nash had placed in his barn an amount of hay for the purpose of paying said note, and that the plaintiff, or any one under him, had taken a portion of the hay and applied it in part payment of said note, that the property in the residue of the hay, which was the subject matter of this suit, became vested in the plaintiff; and he might maintain trover for its conversion by the defendant. The verdict was for the plaintiff; and the defendant filed exceptions to the instructions of the Judge, and to his refusal to give the instructions requested.

*J. H. Hilliard*, for the defendant, said, that unless the hay was left in such a state, and at such a time, as the law requires, in order to discharge the note; or unless the plaintiff actually received it in payment thereof; the plaintiff cannot recover. There was here such an uncertainty as to the quality, quantity, and time when it was turned out, if ever, as would prevent the recovery by the plaintiff. Chipman on Con. 212; *Wyman* v. *Winslow*, 2 Fairf. 398; *Houdlette* v. *Tallman*, 2 Shepl. 400. The note remained unpaid, and the property in the hay unchanged.

The taking of a part of the hay by the plaintiff, under the circumstances, was not evidence of an acceptance of the hay in payment of the note, but the reverse of it. He did not consider the whole note as paid, or he would not have indorsed upon it a partial payment. Besides, the doctrine of the de-

livery of a part for the whole of a quantity of goods is applicable only to the sale of goods.

The instructions tended to lead the jury to draw a wrong inference from the facts, and therefore the verdict should be set aside. 6 Shepl. 436.

*Cony,* for the plaintiff, said that the defendant attempted to escape the consequences of appropriating to his own use property he knew did not belong to him, by denying that other parties have fulfilled a contract in which he had no interest. He contended, that Daniel Nash, the promisor, had done every thing the law required, by delivering the hay according to the terms of the note. The note was paid, and the hay became the property of the plaintiff. *Wyman* v. *Winslow,* 2 Fairf. 398.

No weighing or turning out of the hay was necessary. And besides, if the maker of the note had not done all that was necessary to make a legal tender of the hay in payment of the note, still the plaintiff might, if he chose, waive any irregularities, and accept the hay in payment. *Hoyt* v. *Byrnes,* 2 Fairf. 475.

In this case there was both a legal tender, and an acceptance ; and the instruction to the jury was correct. But even if there was an error or omission, still upon the whole case, as reported, the plaintiff is entitled to recover ; and the Court, therefore, will not set aside the verdict. *McDonald* v. *Trafton,* 15 Maine R. 225 ; *French* v. *Stanley,* 21 Maine R. 512.

The opinion of the Court was drawn up by

SHEPLEY J. — It appears from the bill of exceptions, that Daniel Nash, on September 13, 1838, by a contract in writing promised to deliver to the plaintiff three tons of good English hay, at his barn in Enfield, within six months. Before that time had elapsed, he removed from that place, leaving a quantity of hay in his barn there, estimated to be about three tons. The plaintiff's right to recover in this action, which is trover for a conversion of a part of that hay by the defendant, must depend upon the question, whether Daniel Nash, before

the maturity of the contract, had designated and set apart in the proper place, three tons of hay of a suitable quality in payment of the note. If he had, the property would be thereby vested in the plaintiff. If he had not, he would continue to be the owner, and the defendant, having used it, should account to him for it. The quantity of hay appears to have been deposited and left in the place named in the note within the time agreed upon. The acceptance of a part of it by the plaintiff would authorize the conclusion, in the absence of all opposing testimony, that it was of a suitable quality. If there be any defect, it will be found in the testimony to prove, that it was designated and set apart for the payment of the plaintiff's note. When Daniel Nash removed, the testimony shows, that he carried away all his other property, leaving hay of the quantity and quality, and within the time and at the place named in the note. It does not appear, that there was left any other hay or property, with which it could have been mixed.

The defendant, who is a brother of Daniel, having been called upon by the plaintiff "for the hay due on the note," pointed to a barn "and said, the hay was in the barn, and that they might take it." The jury would be authorized to infer from this conversation, in connexion with the other facts, that the hay had been set apart by Daniel Nash and left in his barn in payment of the plaintiff's note, and that the defendant knew it, if he was not the agent of his brother to deliver it. The fact, that the plaintiff weighed that part of the hay, which he removed about the time, when his note became payable, and indorsed it on the note, might indicate, that he did not intend to receive the quantity found in the barn in full payment of his note, should it fall short in quantity. Such intention could not alter the rights of Daniel Nash, or prevent his tender from becoming effectual, if he had in fact performed his contract. It might have been proper, and perhaps desirable, that the instructions of the presiding Judge should have stated more plainly, that the jury should be satisfied, that the hay was of the quality and was deposited

at the place, and within the time, agreed upon, and that it had been set apart and appropriated to the payment of the note. But there does not appear to have been any contest respecting the quality, or any conflict of testimony respecting the quantity, or the time, when it was deposited. The jury having been required to find, that the hay had been left for the payment of the note, would probably understand, that it should appear to have been set apart for that purpose. If there was any want of explicitness in the instructions, it might have been obviated by a proper request. The request presented, was properly refused. It was not necessary, that the hay "should have been weighed and specially turned out." The quantity might have been otherwise ascertained at the risk of the person making the payment. And no turning out, or change of position, was necessary, further than to separate or set it apart, so that it might be identified and removed by the owner.

*Exceptions overruled.*